## ADAM WALTER, Respondent, *v.* J. NEELY JOHNSON ET ALS., Appellants.

Upon the conveyance of certain land and water privileges by W. to R. and J., an agreement was entered into, which declared that " Whereas, the said Railey " and Johnson have paid two thousand dollars in cash to said Walter, and " there remaining unpaid one thousand dollars which is held as security " by said Railey and Johnson, to protect them from any adverse claim " which may be set up to said property, franchise or privilege, or any part " thereof, by any other person or persons; now, therefore, if the said Railey " and Johnson, their heirs or assigns, shall not within six months herefrom, " have to pay for the release or discharge of any adverse claim against said " property or franchise, or have recovered against them any part or portion " thereof, then the said Railey and Johnson agree to pay to said Walter, his " heirs or assigns, the said sum of one thousand dollars in gold coin of the " United States, at the expiration of six months herefrom; otherwise, this " bond to be null and void." *Held,* that to release Railey and Johnson from the payment of the one thousand dollars, they must show that a valid and substantial claim was set up to the premises; and that to protect themselves, they were compelled to purchase, or extinguish it.

" Adverse claim," in such an instrument, must be interpreted to mean such a valid and paramount title or right which, if asserted in Court, would divert the title granted by the plaintiff.

APPEAL from the District Court of the Second Judicial District, Hon. S. H. WRIGHT presiding.

The facts appear in the Opinion.

*Sunderland, Wood & Hillyer*, attorneys for Appellants.

The testimony shows that at the time of the purchase by defendants, Hayt and Hill had a claim to a portion of the property bought adverse to Walter, and that it was known to Walter.

That the vendee cannot resist successfully, a suit for the purchase money while in peaceable and quiet possession, or without showing an outstanding paramount title in a third person, need not be controverted ; for that is not the case.

The only question upon this branch of the case is, whether Johnson and Railey expended the one thousand dollars retained, properly, for the purpose of procuring the release or discharge of an adverse claim ?

The deed from plaintiff to defendants was made at the same time as the bond in suit ; both were parts of one transaction.

In construing this bond, the words are to be taken to have been used by the parties in their ordinary sense ; and when the words used are free from ambiguity, the intention of the parties will be gathered from them, and the work of the Court will be one of interpretation merely, and not one of construction, strictly speaking. (1 Mass. 91 ; 2 Parsons on Cont. 69 and note ; 1 Greenleaf's Ev. 277 and note.)

Once in possession of the fact that at the time of the purchase, and the execution of this bond, there was a dispute as to the ownership of a portion of the property, the interpretation of this bond becomes easy, especially as the nature of the adverse claim was known at the time to all parties.

What did the parties mean by an " adverse claim ?" Is it possible for the Court to interpret these words, as they are used in the bond, to mean " eviction," or " paramount title ?" We think not. Defendants could have defended an action for the purchase money upon those grounds, without the necessity of any special agreement.

The language of the bond is, that if the defendants shall not " have to pay for the *release* or *discharge* of *any adverse claim*," then the bond is to be of force. Nothing can be clearer than that in the use of these words, the parties had reference to other claims

than those which had their foundation in indisputable right, or paramount title.

The words *release* and *discharge* can have no effect, if defendants had no power to procure a release or discharge of an adverse claim by any other mode than contesting a suit at law. The very object of the parties in retaining the money and executing the bond was, to enable them to buy off adverse claimants, without the necessity of going into ruinous litigation.

In a legal sense, the word "adverse" would oftener indicate a claim doubtful in its character, than one valid beyond question. We speak of an adverse possession, as an act against the rightful owner which may ripen into a good title in time.

We urge that the claim of Hayt and Hill was such an adverse claim as the defendants were justified in removing; that this claim did exist and was known to all parties at the time the bond was executed, and that it is fair to assert that this was the principal, if not the only adverse claim the money was retained as security against.

2d. Plaintiff has no equitable lien upon this property.

Such lien could only exist for unpaid purchase money, and, as already shown, that has been paid in accordance with the terms of the bond.

Although there is some conflict, the weight of authority seems to be that the taking of a note or a simple bond for the purchase money is not a waiver of the lien. The exception is, when some special equity exists founded upon a special agreement, (2 Cal. 287) or when the vendor has manifested an intention to rely no longer upon the estate (1 Mason's Rep. 212).

3d. The vendor's lien is not an absolute charge on land, but only an equitable right to resort to in case there be not sufficient personal estate (1 Blackf. 287 ; 8 Id. 124 ; 12 Id. 411).

Plaintiff has not averred or shown that defendants have not sufficient personal estate.

*Haydon & Deuson*, for Respondent.

1st. The situation and real intention of all parties, and the subject matter, are to be considered in determining the meaning of a con-

tract. (See 2 Cowen, 195; 8 Mass. 214; 10 Id. 379; 11 Id. 302; 11 Pick. 154; 4 Dall. 345.)

2d. Where a contract admits of two constructions, one of which would make it operative and the other defeat it, the former must be adopted. (See *Archbold* v. *Thomas*, 3 Con. 284.)

3d. Railey and Johnson will be held to that meaning of this contract which they reasonably knew Adam Walter supposed it to bear, if such meaning can be given to it without making a new contract for the parties. (See 2 Parsons on Contracts, 499, 500.)

4th. A contract is to be, in a proper case, construed *contra proferentum*. (See 2 Parsons on Contracts, 506–7.) Railey and Johnson gave the contract, wrote it themselves, chose their own words, and are held to the strongest meaning against themselves the words will bear.

5th. The only grounds upon which a vendee can refuse to pay purchase money for land bought by, and deeded to him, are by showing an eviction or paramount title in a third party; and he, by defending under a paramount title, takes the burden of proof upon himself. (See *Thayer* v. *White*, 3 Cal. 230; 2 Kent's Com. star page 472 and notes [b] and [d]; 2 Greenleaf on Ev. top page 267 and note [1]; *Fowler* v. *Smith*, 2 Cal. 44; *Frisbie* v. *Hoffnagle*, 11 Johns. 50; 5 Johns. 120; *Kerr* v. *Shaw*, 13 Johns. 236; *Maury* v. *Porter*, 3 Tenn. 347.)

6th. Johnson and Railey are shown by the evidence at all times to have retained possession of the land, and they cannot retain possession of the land and refuse to pay the purchase money, even under a warrantee deed of the title, for the warranty is not broken until eviction, and an insufficient title might ripen by adverse possession, and by aid of the Statute of Limitations, into a perfect title. (See *Walker* v. *Sedgwick*, 8 Cal. 402–5; which case also shows plaintiff's right to a vendor's lien.)

8th. That plaintiff is entitled to a vendor's lien upon the land described in his complaint, is evident. (See *Salmon* v. *Hoffman*, 2 Cal. 142; *Truebody* v. *Jacobson*, 2 Cal. 286; *Walker* v. *Sedgwick*, 8 Cal. 403; *Sharp* v. *Hess*, 15 Cal. 192–3; and the existence of a vendor's lien is inferentially recognized in the case of *Gibson* v. *Milne et al.*, 1 Nevada Rep. 531–2.)

9th. This being an action to enforce a vendor's lien is a case in

equity, and comes before the Appellate Court upon the pleadings, testimony and decree, and the Court will render in all such cases the decree that is warranted by the pleadings and testimony. (See *Still* v. *Saunders*, 8 Cal. 286–7 ; *Walker* v. *Sedgwick*, 5 Cal. 192 ; *Grayson* v. *Guild*, 4 Cal. 126.) The last named decision was made upon an appeal taken, like this, from an order granting a new trial; and the case cited from 5 Cal. 192 was a suit, like this, brought to enforce a vendor's lien.

Opinion by LEWIS, C. J., full Bench concurring.

This is a proceeding to enforce a vendor's lien which the plaintiff claims against certain property located on the Carson River, in the County of Ormsby. The property upon which it is claimed was sold by the plaintiff to the defendants on the 2d day of July, A.D. 1863, for the sum of three thousand dollars, two thousand of which was paid at the time of conveyance, the remaining thousand dollars was, by agreement of parties, to be retained by the defendants for six months from that time to indemnify them for any adverse claim against the premises which they might be compelled to extinguish during that time. That portion of the written agreement which is material in this case reads as follows : " And whereas, the said Railey and Johnson have paid two thousand dollars in cash to said Walter, and there remaining unpaid one thousand dollars, which is held as security by said Railey and Johnson to protect them from any adverse claim which may be set up to said property, franchise, or privileges, or any part thereof, by any other person or persons ; now, therefore, if the said Railey and Johnson, their heirs or assigns, shall not, within six months herefrom, have to pay for the release or discharge of any adverse claim against said property or franchise, or part thereof, or have recovered against them any part or portion thereof, then the said Railey and Johnson agree to pay to said Walter, his heirs or assigns, the said sum of one thousand dollars in gold coin of the United States, at the expiration of six months herefrom ; otherwise this bond to be null and void." The defendants having been compelled, as they claim, to purchase an adverse claim against the premises within the six months designated in the instrument above referred to, refused, and do now refuse to pay to the

plaintiff the one thousand dollars remaining unpaid of the purchase money. The fact that the defendants paid about twelve hundred dollars for an outstanding claim or title to the premises purchased of the plaintiff, does not seem to be disputed.

It is, however, insisted upon by the plaintiff that the adverse claim set up by Hayt and Hill, and purchased by the defendants, was entirely without foundation or color of right, and could not be maintained as a valid right or title to the land in question ; that no suit had been commenced against the defendants to eject them therefrom ; that they have, ever since the conveyance to them, continued in possession of the premises, and that the purchase of the claim from Hayt and Hill was not necessary to maintain their possession. Such being the state of facts, the plaintiff claims, that under a proper construction of the bond or agreement between him and the defendants, he should recover the balance of the purchase money. In this view of the case, we are disposed to agree with counsel for plaintiff. It is clear, beyond all question, from the evidence presented to us, that the Hayt and Hill claim was but the airy fabric of the imagination—a claim of right without foundation— and that had they commenced suit against the defendants to obtain possession of the premises it is hardly within the range of possibility that they could have recovered, even after making due allowance for all uncertainties attending trial by jury. Indeed, there seems to have been no effort on the part of the defendants in the Court below to show that the Hayt and Hill claim possessed any substantial virtue, or that there was any probability that they would ever have been evicted under it, or that it was in any manner a paramount title. The payment of money to extinguish or purchase such a claim does not come within either the letter or spirit of the instrument referred to. It could not have been the intention of the plaintiff to allow the one thousand dollars due him to be retained as security against any sham or invalid claims which might be made against the premises. The words of the instrument are : " Now, therefore, if the said Railey and Johnson shall not, within six months after the execution of the conveyance, have to pay for the release or discharge of any adverse claim, they will pay to the defendant the balance of one thousand dollars."

The only rational interpretation which can be placed upon this

language is, that one thousand dollars was to be paid to the plaintiff within six months from the time of the execution of the instrument, unless during that time the defendants, to protect themselves, were *compelled* to purchase some adverse claim.    Now, what is meant by "adverse claim," as used in this instrument?    Unquestionably, a valid and paramount title which, if asserted in Court, would defeat that granted by the plaintiff.

By those words the parties certainly could not have meant all claims, whether founded in right or not, which might be set up to the premises, but only such claims as in all human probability would be held paramount or superior to that of the defendants.    Instruments of writing must be interpreted so as to carry into effect the intention of the parties, and in ascertaining that intention, and construing the language employed by them, it is often necessary to resort to those known philosophical principles which in general govern the conduct of rational beings.    All men have some degree of prudence in their nature, and are not disposed to place their rights at the disposal of the public, or to surrender their property to the first person who may make a claim to it, without a show of right.    If we accord to the plaintiff even that ordinary prudence and discretion which men usually exhibit in transactions of this character, we cannot conclude that he intended to bind himself to relinquish his right to a third of the purchase money of his property if any adverse claim, whether founded in right or not, should be set up to the premises.    Neither can we believe that the defendant would have required anything so unreasonable from the plaintiff.    Clearly, the thousand dollars was retained as security for the defendants against any valid or substantial right or title which, within six months from the time of the conveyance, they might be compelled to discharge.

It is evident, therefore, that, to make the defense good, the defendants should have shown that the claim or title which they purchased was a substantial and valid one.    This was not done, and hence we must affirm the order of the Court below granting the plaintiff a new trial.

It is so ordered.